**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MATT SISSEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:10-cv-01263 (BAH) |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| HEALTH AND HUMAN SERVICES, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

### INTRODUCTION

On June 28, 2012, the Supreme Court upheld Section 5000A of the Patient Protection and

Affordable Care Act ("ACA"), 26 U.S.C. § 5000A, as a valid exercise of Congress's taxing

power. *See Nat'l Fed'n of Indep. Business ("NFIB") v. Sebelius*, 132 S. Ct. 2566, 2601 (2012).

In doing so, the Court recognized "that Congress had the power to impose the exaction in

§ 5000A under the taxing power, and that § 5000A need not be read to do more than impose a

tax. That is sufficient to sustain it." *Id.* at 2598. The Supreme Court has spoken, and yet

Plaintiff continues to contend that a statutory requirement that he purchase insurance – a

requirement that exists only in an interpretation rejected by the Court – exceeds Congress's

power under the Commerce Clause. Because the Court has held that Section 5000A is a valid

exercise of Congress's taxing power, and Plaintiff is not required to purchase insurance, his first

claim should be dismissed.

Plaintiff also asserts that the ACA violates the Origination Clause because it did not

originate in the House. Yet it is undisputed that the bill that was ultimately enacted as the ACA

did originate in the House, in the form of H.R. 3590.  *See* Pl.'s Am. Compl., Ex. 1.  In his

response, Plaintiff contends that the Senate's amendments were not "germane" to the subject of

the House bill, yet his brief is silent as to the contents of that bill.  In fact, every provision of the

bill passed by the House concerned the means by which the Government collects revenue,

including modifications to the first-time homebuyer tax credit and increases in the amount of

estimated taxes owed by large corporations.  *See* Defs.' Ex. 2 (H.R. 3590 as passed by House on

Oct. 8, 2009).  It is irrelevant that the House bill "had nothing to do with health insurance

reform," Am. Compl. ¶ 40, as the fact that H.R. 3590 concerned the collection of revenue is

more than sufficient to satisfy any requirement of germaneness.  *See Flint v. Stone Tracy Co.*,

220 U.S. 107, 143 (1911) (upholding law after the Senate substituted a corporation tax in place

of a House-passed inheritance tax).

Even if the ACA could somehow be seen as having originated in the Senate, Plaintiff's

claim still lacks merit.  He contends that the Origination Clause applies to all bills passed as an

exercise of Congress's power under the General Welfare Clause, but the plain language of the

Constitution and the Supreme Court's interpretation of its requirements do not support such a

broad reading.  Instead, the Origination Clause's restriction on "Bills for raising Revenue"

applies only if generating revenue is the legislation's key purpose.  *See* U.S. Const. art. I, § 7, cl.

1; *Twin City Bank v. Nebeker*, 167 U.S. 196, 202-03 (1897) ("[R]evenue bills are those that levy

taxes, in the strict sense of the word, and are not bills for other purposes which may incidentally

create revenue.").  Although Section 5000A is a legitimate exercise of the tax power, there is no

dispute that the revenue-generating provisions of the ACA are not designed with a primary

purpose of raising revenue.  *See NFIB*, 132 S. Ct. at 2596 (recognizing that, although Section

5000A "will raise considerable revenue, it is plainly designed to expand health insurance

2

coverage"). As a result, the bill falls outside the scope of the Origination Clause, and Plaintiff's claim is without merit.

## ARGUMENT

### I. Plaintiff's Claim That Section 5000A Exceeds Congress's Enumerated Powers Has Already Been Rejected by the Supreme Court

Plaintiff's first count asserts that the minimum coverage provision exceeds Congress's authority under the Commerce Clause by requiring individuals to purchase insurance. He contends that, because the Constitution does not authorize such a requirement, the "purchase requirement" and "the associated payment" in Section 5000A must be enjoined. Am. Compl. ¶ 2. But that argument has already been resolved by the Supreme Court's decision in *NFIB*. The Supreme Court has held that Section 5000A is not a mandate or a requirement to purchase insurance, *see, e.g.*, *NFIB*, 132 S. Ct. at 2596-97 ("While the individual mandate clearly aims to induce the purchase of health insurance, it need not be read to declare that failing to do so is unlawful."), but rather a tax, *id.* at 2598. Because the Court has upheld Section 5000A as a valid exercise of an independent enumerated power – the taxing power in Article I – Plaintiff's Commerce Clause claim is wholly without merit.

In asking this Court to enjoin a statutory provision based on the Commerce Clause, Plaintiff relies on a flawed interpretation of the *NFIB* decision. The Court did not rule that any provision of the ACA was unconstitutional, as Plaintiff suggests. *See* Pl.'s Opp'n 2. While Plaintiff contends that the Supreme Court rejected the legal requirement to purchase insurance contained in Section 5000A, the Supreme Court actually interpreted Section 5000A to impose no such requirement. A majority of the Court recognized that "Congress had the power to impose the exaction in § 5000A under the taxing power, and that § 5000A need not be read to do more than impose a tax. That is sufficient to sustain it." *NFIB*, 132 S. Ct. at 2598. Under the holding

in *NFIB*, Plaintiff's attempt to superficially subdivide Section 5000A, rather than read the single statutory section as one integrated whole establishing conditions for tax liability, fails.

In an attempt to salvage his rejected interpretation of the statute, Plaintiff argues that, when the Supreme Court referred to "Section 5000A," it did not really mean what it said. *See* Pl.'s Opp'n 5-6. Chief Justice Roberts recognized that "Section 5000A is therefore constitutional, because it can reasonably be read as a tax," *NFIB*, 132 S. Ct. at 2601, but Plaintiff contends that "context" indicates that what the Chief Justice really meant (in a part of his opinion not signed by any other justice) was that a *portion* of Section 5000A is constitutional. This Court should not so easily discard the plain language of the opinion, but in any event context demonstrates that the Chief Justice interpreted Section 5000A *not* to impose a requirement to purchase insurance. After considering Commerce Clause jurisprudence, Chief Justice Roberts adopted an "alternative reading of the statute" in which Section 5000A "only imposes a tax on those without insurance." *NFIB*, 132 S. Ct. at 2593 (Roberts, C.J.). By applying a "saving construction," the Chief Justice interpreted Section 5000A in a way that upheld the provision in its entirety as a permissible exercise of the taxing power. That analysis leaves no severable portion of Section 5000A for this Court now to enjoin.

The fact that Plaintiff relies on an interpretation of the statute that the Supreme Court has rejected and that the Government does not advance is further demonstrated by his contention that a failure to comply with the "purchase requirement" could have non-tax consequences. *See* Pl's Opp'n 8. That is incorrect. While Plaintiff claims that he "could still risk penalties for non-compliance beyond a simple increase in the amount of taxes due," *see id.*, the Supreme Court recognized otherwise. *See NFIB*, 132 S. Ct. at 2597 ("[I]f someone chooses to pay rather than obtain health insurance, they have fully complied with the law.); *id.* ("[T]he shared responsibility

payment merely imposes a tax citizens may lawfully choose to pay in lieu of buying health insurance."); *id.* at 2600 (The "imposition of a tax nonetheless leaves an individual with a lawful choice to do or not do a certain act, so long as he is willing to pay a tax levied on that choice."). Moreover, neither the Treasury Department nor the Department of Health and Human Services interprets Section 5000A as imposing a legal obligation on applicable individuals independent of its tax-penalty consequences; each instead views it as only a predicate provision for the possible imposition of tax consequences.  Those are the two agencies to which Congress assigned authority to administer the minimum coverage provision, *see, e.g.*, 26 U.S.C. § 5000A(f)(1)(E) and (g)(1), and their views are thus entitled to substantial deference.  Consistent with the Supreme Court's holding, Section 5000A imposes only tax consequences for an individual's failure to maintain minimum coverage, and it thus establishes no independently enforceable legal obligations.  There is no basis for declaratory or injunctive relief against some standalone "requirement to buy health insurance" that does not exist, Am. Compl. ¶ 21, and Plaintiff has no viable claim against Section 5000A.

Plaintiff also asks this Court to consider his claim because, in his view, *other* courts need guidance on how to apply the *NFIB* decision to Commerce Clause cases.  *See* Pl.'s Opp'n 6-7. Plaintiff contends that there is "confusion" among other courts about how to apply *NFIB*, and points to cases in which courts have considered challenges to Congress's power under the Commerce Clause to prohibit certain criminal conduct.  *See, e.g.*, *United States v. Henry*, 688 F.3d 637, 642 (9th Cir. 2012) (possession of homemade machine guns); *United States v. Spann*, No. 3:12-CR-126-L, 2012 U.S. Dist. LEXIS 136282 (N.D. Tex. Sept. 24, 2012) (possession of firearms by convicted felons); *United States v. Williams*, No. 12-60116-CR-RNS, 2012 U.S. Dist. LEXIS 110371 (S.D. Fla. Aug. 7, 2012) (sexual trafficking of minors).  Those courts

determined that, whether *NFIB*'s analysis of the Commerce Clause constitutes a holding or dicta, it did not affect the constitutionality of those laws. The fact that other courts have been called upon to apply the *NFIB* decision in other contexts is no reason for this Court to rule on an issue not properly presented in this case. Instead, such a ruling would constitute an advisory opinion, outside the bounds of this Court's jurisdiction. *See Princeton Univ. v. Schmid*, 455 U.S. 100, 102 (1982) (The courts do not "decide hypothetical issues or [] give advisory opinions about issues as to which there are not adverse parties."). By presenting the Court with no case or controversy requiring consideration of the Commerce Clause, Plaintiff presents no more than an academic exercise in which the Court need not, and must not, engage.

Finally, it is puzzling for Plaintiff to contend that "this Court cannot dispose of Sissel's Origination Clause arguments unless it first determines that, under *NFIB*, Section 5000A is not a Commerce Clause enactment, but a tax." Pl.'s Opp'n 8. The Supreme Court has already spoken to that issue, holding that Section 5000A is a valid exercise of the taxing power. This Court need not reopen that issue in order to address Plaintiff's Origination Clause claim. To the contrary, the Court can (and should, for the reasons explained below) recognize that that the ACA's enactment was consistent with the Origination Clause – whether because the bill is not subject to the Clause or because it originated in the House – without giving further consideration to the scope of Congress's authority under the Commerce Clause.

## II.  The ACA's Enactment Was Consistent With the Origination Clause

Plaintiff also states no actionable claim under the Origination Clause, which provides that "[a]ll Bills for raising Revenue shall originate in the House of Representatives; but the Senate may propose or concur with Amendments as on other Bills." U.S. Const. art. I, § 7, cl. 1. In his brief, Plaintiff attempts to broaden the scope of the Origination Clause and heighten its

requirements to levels not supported by case law or the plain language of the Clause.  His test for

compliance would lead courts to set aside Congressional enactments as a matter of routine.

Instead, the Court's review under the Origination Clause is quite limited, as the Clause imposes

only minimal requirements.  It may be for that reason that the Supreme Court has reviewed only

eight Origination Clause claims in its history, and that it is has never invalidated an Act of

Congress on that basis.   Plaintiff presents no reason for the Court to break new ground here.  To

the contrary, his claim fails for two simple, independent reasons: the ACA originated in the

House as H.R. 3590 and, even if this Court determines otherwise, the ACA is not a "Bill for

raising Revenue" within the meaning of the Origination Clause.

### A.  Enactment of the ACA Complied With the Origination Clause Because the Law Originated In the House

The Court's analysis can begin and end with the undisputed fact that the ACA originated

in the House.  Indeed, Plaintiff himself recognizes that the law enacted as the ACA originated in

the House as H.R. 3590.  *See* Pl.'s Am. Compl., Ex. 1.  That bill, which modified certain tax-

credit, tax-penalty, and estimated-tax provisions of the Internal Revenue Code, was passed by the

House on October 8, 2009.  *See* Defs.' Mot., Ex. 1.  The Senate then amended the bill by striking

its text and substituting in the provisions that ultimately became the ACA.  *See id.*  The Senate

passed the bill on December 24, 2009, and the House agreed to the bill as amended on March 21,

2010.  The President then signed the ACA into law on March 23, 2010.  The undisputed origins

of H.R. 3590 as a House bill thus render Plaintiff's claim without merit.

Plaintiff contends that, notwithstanding the House's passage of H.R. 3590, "Section

5000A originated in the Senate when the Senate struck the entire text of H.R. 3590."  Pl.'s Opp'n

9.  By focusing on one provision rather than the full bill, Plaintiff misunderstands the

requirements of the Origination Clause.  The Clause does not require that each individual

provision of a "Bill for raising Revenue" originate in the House, but rather that the "Bill" originate in the House.  U.S. Const. art. I, § 7.  The Clause does not preclude the Senate from inserting new provisions, or even from substituting out the entire text of the House bill.  Instead, the Clause itself provides that "the Senate may propose or concur with Amendments as on other Bills."  *Id.*

The fact that the Senate inserted Section 5000A as part of an amendment that replaced the text of the House bill does not run afoul of the Origination Clause.  The Supreme Court recognized as much in *Flint v. Stone Tracy Co.*, 220 U.S. 107, 143 (1911), where it upheld a bill in which the Senate had substituted a corporation tax into a House-originated bill containing an inheritance tax.  Indeed, the commonplace procedure of the Senate adopting an amendment that substitutes the entire text of a House-originated bill continues to this day, and has been upheld by the courts that have considered this issue.[1]  For example, the Ninth Circuit has held that the Origination Clause was satisfied where the Senate replaced the "entire text of the House bill except for its enacting clause."  *Armstrong v. United States*, 759 F.2d 1378, 1381-82 (9th Cir. 1985).  *See also Rowe v. United States*, 583 F. Supp. 1516, 1519 (D. Del.), *aff'd mem.*, 749 F.2d 27 (3d Cir. 1984) ("Although the Senate amendment substituted an entirely new text for the

---

[1] As Plaintiff notes, Congress followed this procedure in enacting the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), which was then upheld in the face of Origination Clause challenges.  *See, e.g.*, *Boday v. United States*, 759 F.2d 1472, 1476 (9th Cir. 1985).  That is but one example of recent legislation in which the Senate has amended a House-passed bill by substituting out the entire text.  A notable example is the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, major tax-reform legislation signed into law by President Reagan.  That law originated in the House as H.R. 3838, and on May 29, 1986 the Senate Committee on Finance reported the bill with an amendment consisting of a complete substitute of the House-passed text.  Most recently, the American Taxpayer Relief Act of 2012 – legislation enacted to avert the so-called "fiscal cliff" – was adopted by the same procedure.  On August 1, 2012, the House passed H.R. 8.  On December 31, 2012, the Senate adopted Senate Amendment 3448, which substituted out all but the enacting clause from the House bill.  The Senate passed the bill as amended on January 1, 2013, and, after passage by the House, the law was signed by President Obama the following day.

House version, the bill began in the House for Origination Clause purposes." (citation omitted)). *See also* Pl.'s Opp'n 11 (Plaintiff conceding that the Senate may adopt an amendment replacing all text in a bill passed by the House, so long as the original House bill was a "Bill for raising Revenue").

While he recognizes that the ACA originated in the House as H.R. 3590, Plaintiff argues that that is irrelevant because the bill passed by the House was not a "Bill for raising Revenue," while the bill that passed the Senate was.  Essentially, Plaintiff contends that the House originated a bill, but the Senate originated a "Bill for raising Revenue."  Plaintiff's argument fails.  Even if the Court were to look at the content of the original House bill – which is ignored in Plaintiff's brief – that bill's focus on revenue collection measures resolves any doubt that, if the ACA is a "Bill for Raising Revenue," then so is the House bill.

Despite the importance that Plaintiff's argument places on the substance of the original House bill, his brief is conspicuously silent as to the contents of H.R. 3590 as it originated in the House.  That may be because the House bill focused on modifying revenue-collection measures; indeed, every provision of H.R. 3590 concerned the Government's collection of revenue.  That bill, entitled the Service Members Home Ownership Tax Act of 2009, modified certain tax-credit, tax-penalty, and estimated-tax provisions of the Internal Revenue Code.  *See* Ex. 2 (H.R. 3590 as passed by House on Oct. 8, 2009).  For example, Sections 2 and 3 of the bill modified the first-time homebuyers tax credit for members of the armed forces.  The tax credit, as originally enacted into law, provided a tax incentive for the purchase of a new residence by first-time homebuyers in 2009 and 2010, and provided for the recapture of the credit from taxpayers who sold their homes soon after claiming the credit.  *See* 26 U.S.C. § 36(a), (f).  In H.R. 3590, the House sought to modify the credit to waive recapture for members of the armed forces who

received Government orders for extended duty service, and to extend the eligibility period for individuals whose service required them to be outside the United States for an extended period in 2009. *See* Ex. 2, §§ 2, 3.  H.R. 3590 also increased filing penalties for the failure to file a partnership or S corporation return. *See id.*, § 5.  And in its most clear attempt to raise additional revenue, H.R. 3590 sought to amend the Corporate Estimated Tax Shift Act of 2009 to increase the amount of estimated tax payments owed by corporations with assets of at least $1,000,000,000. *See id.*, § 6 (amending section 202(b) of the Corporate Estimated Tax Shift Act of 2009, set forth at Title II of Pub. L. 111-42, 123 Stat. 1964 (2009), § 202(b)).

H.R. 3590, as it originated in the House, thus consisted entirely of amendments to the Internal Revenue Code and modifications to the Government's collection of revenue.  It is of no moment that certain sections in the bill sought to decrease tax burdens (by expanding eligibility for tax credits) rather than increasing revenue.  As the Ninth Circuit recognized in *Armstrong*, "once a revenue bill has been initiated in the House, the Senate is fully empowered to propose amendments, even if their effect will be to transform a proposal lowering taxes [] into one raising taxes." *Armstrong*, 759 F.2d at 1381-82.  The Origination Clause does not require that any *increase* in taxes originate in the House.[2]

While Plaintiff's brief does not address the contents of the original House bill, he does in passing contend that the Senate's amendment was not "germane" to the House bill.  Pl.'s Opp'n 12.  This follows the allegation in his amended complaint that the bill passed by the House "had nothing to do with health insurance reform."  Am. Compl. ¶ 40.  These allegations miss the mark, as the Origination Clause imposes no requirement that Section 5000A or other provisions of the Senate's amendment be related to the subject matter of any particular provision passed by

---

[2] Plaintiff takes no issue with this interpretation of the Origination Clause, as he quotes *Armstrong* approvingly on this point in his brief. *See* Pl.'s Opp'n 11.

the House.  That is demonstrated by the Supreme Court's decision in *Flint*.  The Court in *Flint* found that the Senate's amendment was "germane to the subject-matter of the bill," even though the Senate had substituted a corporation tax in place of an inheritance tax.  220 U.S. at 143.  The fact that the bill passed by the House and the later Senate amendments concerned the collection of revenue is more than sufficient to satisfy any requirement of germaneness.[3]

To the extent Plaintiff believes the Origination Clause demands more, he is incorrect. Plaintiff cites to no case in which a court found that a law ran afoul of the Origination Clause because the House and the Senate bills concerned distinct subject matters.  As the Supreme Court made clear in *Rainey v. United States*, 232 U.S. 310, 317 (1914), the question of whether an amendment is germane is entrusted not to the courts but instead to the Senate, in proposing the amendment, and to the House, in accepting it.  "Having become an enrolled and duly authenticated act of Congress, it is not for the court to determine whether the amendment was or was not outside the purposes of the original bill."  *Id.*  Instead, the Court's role here is limited to ensuring that the bill originated in the House (which it did), and does not entail a comparison of the subject matter of the two bills.  Because the ACA originated in the House as H.R. 3590, its enactment was consistent with the Origination Clause.

**B.  The ACA Is Not a "Bill for Raising Revenue" Subject to the Origination Clause**

If the Court determines that the ACA did not originate in the House, Plaintiff's challenge to Section 5000A is still without merit because the bill passed by the Senate and enacted as the ACA is not a "Bill for raising Revenue" subject to the Origination Clause.  The enactment of

---

[3] Moreover, Plaintiff's brief fails to account for the fact that the minimum coverage provision was subsequently amended by the Health Care and Education Reconciliation Act of 2010, Pub. L. 111-152.  The origination of that bill is undisputed, as it was first passed by the House as H.R. 4872.  There is thus no question that the statutory provision now in force as the minimum coverage provision originated in the House.

Section 5000A would thus be consistent with the Origination Clause even assuming *arguendo* that the bill originated in the Senate.

In moving to dismiss, Defendants explained that the fact that Congress exercised its powers under the General Welfare Clause when it enacted Section 5000A did not convert that provision into a "Bill for raising Revenue" for purposes of the Origination Clause. *See* Defs.' Mot. to Dismiss Am. Compl. 7-11. Because the Clause applies only to "Bills for raising Revenue," it is not enough to show that the bill was an exercise of Congress's taxing power or that it generates revenue, as is the case with the ACA. Instead, the Clause applies only if generating revenue was the ACA's key purpose, which it was not.

In response, Plaintiff does not contend that the purpose of the minimum coverage provision is to raise revenue. Instead, the core of his response is his contention that Section 5000A is subject to the Origination Clause strictly because it was enacted as an exercise of Congress's taxing power. Plaintiff contends that the Origination Clause applies to measures enacted solely as an exercise of Congress's power under the General Welfare Clause, and not to any measures enacted pursuant to other enumerated powers. *See* Pl.'s Opp'n 14-15 ("[W]here a tax is imposed only as an exercise of the tax clause, and not as an adjunct to a regulation of commerce, or the exercise of some other enumerated power, then it is a tax for raising revenue subject to the Origination Clause.").

Plaintiff's argument fails because the Origination Clause applies to a limited subset of bills authorized by the General Welfare Clause. Several considerations make this clear. While Plaintiff's argument equates "Bills for raising Revenue" with bills passed under the tax power, the different scope of the constitutional provisions is indicated by their use of different language. While the General Welfare Clause authorizes Congress to "lay and collect Taxes, Duties,

Imports, and Excises," U.S. Const. art. I, § 8, cl. 1, the Origination Clause uses a different term

("Revenue") and applies only to "Bills *for* raising Revenue," U.S. Const. art. I, § 7, cl. 1

(emphasis added).  As the Supreme Court recognized in *NFIB*, "the taxing power is often, very

often, applied for other purposes than revenue." *NFIB*, 132 S. Ct. at 2596 (quoting 2 J. Story,

*Commentaries on the Constitution of the United States* § 962, p. 434 (1833)).  The fact that

Congress's primary purpose in enacting a bill is to raise revenue is immaterial in determining

whether the law is a proper exercise of the tax power, but it is dispositive for purposes of the

Origination Clause.  *See Twin City Bank v. Nebeker*, 167 U.S. 196, 202-03 (1897); *Millard v.

Roberts*, 202 U.S. 429, 437 (1906).  For these reasons, "Taxing Clause and Origination Clause

challenges . . . represent separate lines of analysis." *Texas Office of Pub. Util. Counsel v. F.C.C.*,

183 F.3d 393, 427 (5th Cir. 1999).

In his brief, Plaintiff points to a few examples of laws that courts have found to be subject

to the Origination Clause.  *See* Pl.'s Opp'n 15.  In Plaintiff's view, each law was enacted

pursuant to Congress's taxing power.  But he does not point to a case in which the court found

that fact relevant to, let alone dispositive of, whether the Origination Clause applied.  Contrary to

Plaintiff's argument, there is no such bright-line rule regarding the scope of the Origination

Clause.

Instead, his attempt to equate the scope of the Origination Clause and the Tax Clause

relies heavily on the Sixth Circuit's decision in *Rodgers v. United States*, 138 F.2d 992 (6th Cir.

1943).  *See* Pl.'s Opp'n 16.  Plaintiff's implication is that *Rodgers* stands for the proposition that

the Origination Clause applies to all bills, and only those bills, passed under the Tax Clause.  *See

id.*  But, as he mentions in passing, the court in *Rodgers* did not even consider the Origination

Clause.  Rather, *Rodgers* provides that bills enacted as an exercise of Congress's authority under

13

the General Welfare Clause must comply with the Constitution's restrictions on direct taxes. *See* U.S. Const. art. I, § 9, cl. 4 ("No Capitation, or other direct, Tax shall be laid, unless in Proportion to the Census or Enumeration herein before directed to be taken.").  Because the measure at issue in that case – penalties assessed on farmers who marketed cotton in excess of quotas established by the Agricultural Adjustment Act of 1938 – was a valid exercise of Congress's power under the Commerce Clause, it was not governed by the requirement that direct taxes be apportioned among the states. *See Rodgers*, 138 F.2d at 995 ("[T]he Constitutional limitation on which appellant relies relates solely to taxation generally for the purpose of revenue only, and not impositions made incidental under the commerce clause . . . .").

The upshot of *Rodgers* is that a bill passed under the Tax Clause but not the Commerce Clause must comply with the Direct Tax Clause.  Plaintiff does not contend that Section 5000A is an improper direct tax, an argument that the Supreme Court rejected in *NFIB*. *See* 132 S. Ct. at 2599 ("The shared responsibility payment is thus not a direct tax that must be apportioned among the several states.").  But the fact that the Direct Tax Clause applies to all measures passed as an exercise of the tax power says nothing about the scope of the Origination Clause. *Rodgers* did not consider the scope of the Origination Clause, or its application to the statute at issue in that case, and it offers no useful guidance for the Court here.

Instead, unlike the General Welfare Clause, the Origination Clause applies only if generating revenue is the legislation's key purpose.  "[R]evenue bills are those that levy taxes, in the strict sense of the word, and are not bills for other purposes which may incidentally create revenue." *Nebeker*, 167 U.S. at 202-03; *see also Millard*, 202 U.S. at 437 (statute imposing property taxes designed to finance railroad construction activities was not bill for raising revenue).  Even Congress's decision to label a measure as a "tax" does not necessarily subject

the provision to the Origination Clause, when the bill is designed to serve other purposes.  *See Nebeker*, 167 U.S. at 202-03; *Millard*, 202 U.S. at 437.  As the Supreme Court noted in *United States v. Norton*, 91 U.S. 566, 569 (1875), "'Bills for raising revenue' when enacted into laws, become *revenue laws*," and "revenue laws" include "such laws 'as are made for the direct and avowed purpose of creating revenue or public funds for the service of the government.'"  *Id.* at 569 (quoting *United States v. Mayo*, 1 Gall. 396, 26 F. Cas. 1230, 1231 (C.C. Mass. 1813)) (emphasis in original).

Under the proper standard, the ACA is not a "Bill[] *for* raising Revenue."  U.S. Const. art. I, § 7 (emphasis added).  While certain provisions of the law concern the collection of revenue, the revenue-generating provisions – such as the minimum coverage provision and the employer responsibility provision – are not designed with a primary purpose "to raise revenue to be applied in meeting the expenses or obligations of the government."  *Nebeker*, 167 U.S. at 203. Instead, the provisions are "but means to [accomplish] the purposes provided by the [A]ct." *Millard*, 202 U.S. at 437.  As the Supreme Court recognized with respect to the payment associated with the minimum coverage provision, "[a]lthough the payment will raise considerable revenue, it is plainly designed to expand health insurance coverage."  *NFIB*, 132 S. Ct. at 2596.  *See also Seven-Sky v. Holder*, 661 F.3d 1, 6 (D.C. Cir. 2011), *cert. denied*, __ S. Ct. __ (2012) (recognizing that Congress's primary purpose in enacting Section 5000A was not to raise revenue).  As was the case with the special assessment upheld in *United States v. Munoz-Flores*, 495 U.S. 385, 399 (1990), "[a]ny revenue for the general Treasury that [Section 5000A] creates is [only] incidental to [the] provision's primary purpose."  Indeed, Plaintiff himself does not contend that the purpose of Section 5000A is to generate revenue.  *See* Pl.'s Opp'n 18

(recognizing that Section 5000A "has an effect on individual conduct").  That is sufficient to place the law outside the scope of the Origination Clause.

Finally, Plaintiff briefly contends that the ACA must be subject to the Origination Clause because the Supreme Court's decision in *NFIB* considered whether Section 5000A constituted a direct or capitation tax.  *See* Pl.'s Opp'n 18.  According to Plaintiff, the Court's willingness to consider that issue demonstrates that Section 5000A is subject to the Clause "since the prohibitions against direct or capitation taxes – like the Origination Clause – only apply to bills for raising revenue."  *Id.*  This argument is flawed because it assumes the very thing he is attempting to prove – i.e., it incorrectly assumes that all taxes are "Bills for raising Revenue." The Constitutional restriction on direct taxes speaks of "Capitation, or other direct, Tax[es]." *See* U.S. Const. art. I, § 9, cl. 4.  While that provision shares language with the General Welfare Clause, its reference to "Tax[es]" makes it broader than the Origination Clause for the reasons set forth above.

## CONCLUSION

For the reasons stated herein, and in Defendants' motion, the Court should dismiss Plaintiff's amended complaint for failure to state a claim upon which relief can be granted.

Dated:  January 11, 2013.

Respectfully submitted,

STUART F. DELERY
Principal Deputy Assistant Attorney General

IAN HEATH GERSHENGORN
Deputy Assistant Attorney General

SHEILA M. LIEBER
Deputy Branch Director

*/s/ Scott Risner*
SCOTT RISNER (MI Bar No. P70762)
Trial Attorney

United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20001
Telephone: (202) 514-2395
Fax: (202) 616-8470
Email: scott.risner@usdoj.gov

Counsel for Defendants